UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NAEL SHAMMA,

        Petitioner,                  Case No. 1:26-cv-492

v.                                          Honorable Jane M. Beckering

KEVIN RAYCRAFT et al.,

        Respondents.
_____/

**OPINION**

      Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**Discussion**

**I.    Procedural History**

      In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.21–22.)

      In an Order entered on February 17, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on February 20, 2026 (ECF No. 4), and Petitioner filed his reply on February 25, 2026 (ECF No. 5).

## II.     Relevant Factual Background

Petitioner was born in Jerusalem and is Palestinian. (Pet., ECF No. 1, PageID.6.) Petitioner reports that "[h]e does not hold citizenship to any country," and Respondents state that they consider Petitioner to be "a Palestinian native with Jordanian citizenship." (Anderson Decl. ¶ 4, ECF No. 4-1, PageID.52.) Petitioner entered the United States in 1976 as a Lawful Permanent Resident. (*Id.*) In 1986, Petitioner was convicted of aggravated battery and armed violence, as well as three counts of robbery and one count of theft, in the Cook County Circuit Court in Chicago, Illinois. (*Id.* ¶¶ 5–6.)

Thereafter, on August 10, 1987, the Immigration and Naturalization Service "issued [Petitioner] an Order to Show Cause, charging him with deportability under former section 241(a)(4) of the Immigration and Nationality Act [(INA)] for being convicted of two or more crimes involving moral turpitude." (*Id.* ¶ 7, PageID.52–53.) The Chicago Immigration Court ordered Petitioner deported to Jordan on November 28, 1989. (*Id.* ¶ 8, PageID.53.) Petitioner did not file an appeal with the Board of Immigration Appeals. (*Id.*) On May 25, 1990, the Immigration and Naturalization Service released Petitioner from custody "pursuant to an Order of Supervision because a travel document was unable to be acquired to effectuate [Petitioner's] deportation." (*Id.* ¶ 9.) Thereafter, on February 3, 1998, the Immigration and Naturalization Service "issued a detainer because [Petitioner] was taken into custody [by] the Michigan Department of Corrections." (*Id.* ¶ 10.) Petitioner was then taken into custody by the Immigration and Naturalization Service on June 14, 2000, "after being released by the Michigan Department of Corrections," and the Immigration and Naturalization Service released him from custody "on an Order of Supervision" on December 15, 2000, "because a travel document was unable to be acquired to effectuate [Petitioner's] deportation." (*Id.* ¶ 12.) Subsequently, Petitioner was taken into ICE custody from January 9, 2012, until April 9, 2012, "after he failed to appear for his Order

of Supervision appointment." (*Id.* ¶¶ 13–14, PageID.54.) Petitioner was released on April 9, 2012, "because a travel document was unable to be acquired to effectuate [Petitioner's] deportation." (*Id.* ¶ 14.)

On August 7, 2025, ICE took Petitioner into custody based on his final order of deportation from 1989. (*Id.* ¶ 15.) ICE requested travel documents for Israel and Jordan, "but the requests were denied on August 8, 2025." (*Id.* ¶ 16.) "On August 27, 2025, ICE requested authorization from the consulate of Israel to remove [Petitioner] to the Palestinian Territories;" there is no indication in the record presently before the Court that ICE has heard anything from the consulate of Israel about this request. (*Id.* ¶¶ 17, 19.) On February 17, 2026, ICE conducted a "180-day panel review . . . and the panel recommended continued detention," noting that Petitioner "has no significant ties to the community and no humanitarian grounds for release" and that "[t]here is a significant likelihood of removal in the reasonably foreseeable future because Israel will take stateless subjects and transfer to Palestine via the West Bank." (*Id.* ¶ 20, PageID.55.)

### III.   Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.   Merits Discussion

The parties agree that because Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. (*See* Pet., ECF No. 1, PageID.14; Resp., ECF No. 4,

PageID.46–47.) However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (*See* Pet., ECF No. 1, PageID.16–21.) In response, Respondents argue that Petitioner's continued detention under 8 U.S.C. § 1231(a) remains lawful and does not implicate the constitutional concerns identified in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).[1] (*See* Resp., ECF No. 4, PageID.46–48.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final in 1989. The 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[2] "[O]nce [a

---

[1] Although Respondents indicate that Petitioner has past criminal convictions, Respondents do not assert that they are currently detaining Petitioner under any mandatory detention provisions due to Petitioner's past criminal convictions.

[2] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

In this case, Petitioner was most recently taken into custody by ICE on August 7, 2025, and as of February 7, 2026, Petitioner had been in custody for six consecutive months. Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists because he has had a final order of removal since 1989, and Respondents continue to be unable to remove Petitioner, as demonstrated by Respondents' repeated inability to acquire travel documents for Petitioner. In response, Respondents assert only that "[t]here is a significant likelihood of removal in the reasonably foreseeable future because Israel will take stateless subjects and transfer to Palestine via the West Bank." (Anderson Decl. ¶ 20, ECF No. 4-1, PageID.55.) However, although "[o]n August 27, 2025, ICE requested authorization from the consulate of Israel to remove [Petitioner] to the Palestinian Territories," there is no indication in the record presently before the Court that ICE has heard anything from the consulate of Israel about this request in the intervening six months. (*Id.* ¶¶ 17, 19, PageID.54.) Indeed, nothing presented to this Court suggests that Respondents are any closer to removing Petitioner than they were in August 2025.

Under these circumstances, the Court concludes that the fact that the government has been unable to acquire a travel document to effect Petitioner's removal for the past six months, as well as on multiple occasions since 1989, provides "good reason" to believe that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Because Petitioner has met his burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.* Respondents' sole evidence is the assertion that "[t]here is a significant likelihood of removal in the reasonably foreseeable future because Israel will take stateless subjects and transfer to Palestine via the West Bank." (Anderson Decl. ¶ 20, ECF No. 4-1, PageID.55.) However,

5

beyond this general, speculative statement, Respondents do not indicate that Israel has in fact agreed to take this action for Petitioner, and even assuming that Israel had indicated a willingness to do this for Petitioner, Respondents provide no information about any timeline for this occurrence. Under these circumstances, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court, therefore, will grant Petitioner's § 2241 petition.

## V. Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VI. Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of the other named Respondents.[3] The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan,

---

[3] The Court previously dismissed the Warden of North Lake Processing Center as a Respondent. (Order, ECF No. 3.)

the Court will retain the Detroit ICE Field Office Director and the Secretary for the Department of Homeland Security as Respondents. The Court will dismiss the United States Department of Homeland Security, the United States Attorney General, and the Executive Office for Immigration Review as Respondents.

## Conclusion

For the reasons discussed above, the Court will enter a Judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject to any conditions of release that existed prior to Petitioner's present detention. The Court will also order Respondents to file a status report within five days of the date of this Court's Opinion and Judgment to certify compliance with this Opinion and the corresponding Judgment. Further, the Court will dismiss the United States Department of Homeland Security, the United States Attorney General, and the Executive Office for Immigration Review as Respondents.

Dated:      March 4, 2026                    /s/ Jane M. Beckering
                                             Jane M. Beckering
                                             United States District Judge